Good morning. Illinois Appellate Court First District Court is now in session. The Fourth Division, the Honorable Justice Thomas E. Hoffman presiding, case number 22-1833, Haayy, LLC v. Illinois Department of Financial Professional Regulation. Good morning. The time we allot for oral argument is 15 minutes for the epilogue, 15 minutes for the appellee, five minutes in rebuttal. I don't use the timing lights, but I will hold you to the time. Second of all, we're familiar with the facts of this case. Don't burn up your time giving us facts ad nauseam. Get to the issues you want to discuss. Appellant, you can start. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. I am Robert M. Walker, and I represent Haayy, LLC, the Plaintiff Appellant in this matter. Your Honors, Plaintiff's Judicial Review Complaint presents three questions of law for this Court to decide. The first question of law is, does defendant have a duty under Section 3-108B of the ARL to file a Record of Proceedings as its answer to Plaintiff's Judicial Review Complaint? It is Plaintiff's position that the answer is yes. Your Honors, the Record of Proceedings issue before this Court is simple. The ARL places a statutory duty on defendant to file a Record of Proceedings as its answer to Plaintiff's Judicial Review Complaint, and defendant has not met that duty in this matter. Counsel, could I ask you a question? Yes. Assuming that you lose on the point issue on the constitutional question, in that particular case, could you tell me how you're prejudiced by them not following the statute on hearings before the issuance of an administrative decision? Yes, Your Honor. The plain language of the ARL places a statutory duty on... Counsel, we understand there's a duty. Yes. That's not the question I asked you. I asked you if you lose on the veterans point issue, what prejudice have you suffered because of the failure to follow the hearing requirement? The prejudice that the plaintiff has suffered is that it has been denied Judicial Review in the manner that the ARL contemplates is completed. Okay, one other question that I have, and that is, if you lose on the veterans point issue and you cannot sustain it, what argument could you possibly have been made before the administrative agency other than the constitutional question, which they're not capable of answering? Yes, Your Honor. So, the issue in regards to the Record of Proceedings is what procedural due process requires, and the law is clear and... Counsel, you're not answering my question. What argument could you possibly have made before the administrative agency other than the constitutional question on the veterans point? You're correct, Your Honor. The only argument that plaintiff would have made before an administrative hearing is the constitutional challenge to the veterans points. However, the due process requires plaintiffs to have had the opportunity to make that argument so that proper Judicial Review can be had. Well, but if the agency cannot address the constitutional issue, they don't have the power to do that. The cases are legion. They cannot address constitutional questions, statutory constitutional questions. So, if you had no other argument, and if you lose the veterans issue, then in that particular case, you can't sustain any claim of prejudice, could you? Other than a naked violation of the statute. Yeah, so that's the thing, Your Honor. The idea that because plaintiff's Judicial Review complaint is strictly based on a question of law does not create an exception under the ARL for what procedural due process requires. So, plaintiff is just simply setting the stage that defendants' actions have in fact violated procedural due process under the ARL in conjunction with what plaintiff believes is the constitutional violation under the legislative intent of the CRTA in regards to plaintiff being excluded from the tied applicant lottery solely for not being majority veteran owned. So, it would appear as if this veterans point issue underlies almost every issue you've raised. Why don't you get to the question of whether the granting of the veterans points by statute is unconstitutional as applied? Sure, Your Honor. The second question of law in plaintiff's Judicial Review complaint deals with was it unconstitutional for a defendant to unilaterally impose a veterans ownership requirement in the tied applicant lottery? It is plaintiff's position that the answer is yes. Your Honors, the legislative intent of the Cannabis Regulation and Tax Act or CRTA must be the controlling factor in this court's decision on plaintiff's as applied constitutional challenge for being excluded from the tied applicant lottery solely for not being majority veteran owned. This court's recent ruling in Fox River Gardens LLC versus the Illinois Department of Financial and Professional Regulations, which defendant itself cited as a supplemental authority in this matter, is dispositive on the legislative intent of the CRTA. This court in Fox River Gardens states, quote, as explained, the statute on its face did not a veteran ownership requirement, end quote. Therefore, this court recently ruled that the legislative intent of the CRTA is to not impose a veterans ownership requirement under the act. Therefore, Your Honors, the legislative intent... Counsel, can I ask you, what section of the statute imposes a veterans ownership requirement? Your Honor, no section of the CRTA imposes a veterans ownership requirement. However, defendant's application and interpretation of the tied applicant definition that only 252 points qualify for the tied applicant lottery created and imposed a veterans ownership requirement in the tied applicant lottery. And it's plaintiff's position that the legislative intent of the CRTA must be carried out and accomplished throughout every stage of the administration of the act, including the tied applicant lottery. Thus, it is unconstitutional for a defendant to have unilaterally imposed a veterans ownership requirement in the tied applicant lottery by declaring... How did they impose a veterans requirement? Your Honor, it was defendant's decision that 252 points was the only qualifying score for the tied applicant lottery. Based on that decision, no applicant that was not majority veteran-owned could participate in the tied applicant lottery. That creates a de facto veterans ownership requirement in the tied applicant lottery, Your Honor, and that's the basis of plaintiff's constitutional claim. As applied in the tied applicant lottery, the tied applicant definition was misinterpreted by defendant to impose a veterans ownership requirement. It's plaintiff's interpretation that the proper, fair, and statutory threshold score for the tied applicant lottery should have been 230 points because it is that interpretation of the tied applicant definition that holistically and reasonably aligns with the legislative intent of the CRTA and does not impose a veterans ownership requirement, Your Honors. Counsel, the veterans award, the veterans preference was five points, correct? Yes. Your client had, what, 245 points? Is that what it was? Yes, Your Honor. My client, it's important to note that the veterans, the five optional veterans points that was listed as optional on the application, the only point... Right, optional in that you would not be penalized. You would not be penalized if you did not have that requirement. But in fact, Your Honor, my client was penalized. My client was excluded from the tied applicant lottery solely for not having those points. That's the point. The option... It wasn't optional. Your application was not rejected because it did not have those points, correct? My application was rejected from the tied applicant lottery because we didn't have... Your application was not rejected from scoring because it did not include the veterans preference on the application. Is that correct? Well, first off, Your Honor, we believe there is no veterans preference on the... Under the CRT... Answer the question, Counsel. I know what you believe. I've read the brief. Okay. Your application was not rejected because it did not contain a veterans qualification, five points. Is that correct? And then was awarded the five points. Yes, Your Honor. The plaintiff's application was not rejected because it did not have the five optional veterans points. But the issue here, again, this is an as-applied challenge. So the issue here is, was it unconstitutional for defendant... Sorry, for plaintiff to be solely excluded from this tied applicant lottery for not being majority veteran when... And I turn back to this court's recent ruling. The court stated in there that the mere allocation of five points for majority veteran known applicants did not equate to a veterans ownership requirement under the act. And Your Honors, if we look, because this is about the legislative intent, if you do an overview of the CRTA, you'll notice that the act includes two finding sections where the General Assembly states its legislative intent. The first in Article One states the legislative intent to legalize marijuana and treat it in a similar fashion as alcohol. The second legislative intent... Sorry, the second finding section states the social equity legislative intent. Had this... Had the General Assembly intended there to be a veterans preference of any kind... Counselor, your opponent is going to come back and say, the only reason you were excluded from the tied applicant lottery was because you didn't have 250 points. You were excluded because you only had 245 points. You weren't excluded because there was some requirement that you have veterans preference points, assuming for a minute that no one had veterans preference points, you certainly would not have been excluded from the tied applicant lottery if everyone had 245 points. So they... You weren't in... It occurs to me factually, you're not in the tied applicant lottery because you didn't have 255 points or 250 points. Pardon me. Your Honor, Plaintiff does not dispute that fact. What Plaintiff is saying is that if this court has concluded that the act itself does not impose a veterans ownership requirement, that's the legislative intent, then... It doesn't. It does not. You're 100% correct. It doesn't impose any veterans... Okay, so if the act... If the court has concluded that the act doesn't impose a veterans ownership requirement, how then can it be constitutional for Plaintiff to have excluded from the tied applicant lottery solely because... Because the legislature gave five points to anyone who was a veteran and everybody evidently in the tied applicant lottery were companies that had veterans and were entitled to the preference points. They scored 250. You It's not required anywhere in the act. Your Honor, you've just admitted that... I didn't admit anything. Go ahead. Your Honor, sorry. I apologize, Your Honor. It's clear that no applicant that did not receive the five optional veterans points could participate in the tied applicant lottery. You're 100% correct with that. Thank you. So then therefore... If you were not majority veteran owned, you could not participate in a tied applicant lottery, given that... You couldn't be part of the group of 250. You're right there. Given that the General Assembly has... The legislative intent of the General Assembly is clear that this is a social equity bill intended to give application benefits to social equity applicants. The fact that Plaintiff, as a social equity applicant, was solely excluded from the tied applicant lottery only because it was not majority veteran owned undermines the social equity intent of the Cannabis Regulations and Tax Act. So therefore, it gets back to the point of legislative intent that, again, whether you... If at the end of the day, the impact is that no non-veteran could participate in a tied applicant lottery, that means that there's a veterans ownership requirement in that lottery that the General Assembly did not attend. And, Your Honor, it's important to also note that the defendant itself admitted that the General Assembly amended the act in direct response to Plaintiff's lawsuit challenging the veterans ownership requirement in the tied applicant lottery and adopted its own definition of a tied applicant and did not adopt defendant's original definition of a tied applicant. So it defies logic that if the General Assembly would take the substantial step of amending its act in response to this outcome that they intended for that outcome to occur. So why would the same harm that caused the General Assembly to amend the act in 2021? It doesn't make sense. Now, Counsel, under the amendment, would your client have been in the tied applicant lottery? Yes, Your Honor. It is our position that the proper interpretation of the CRTA's tied applicant definition in accordance with the CRTA's legislative intent is that 230 points is the statutory threshold score to have qualified for the tied applicant lottery. And why that is, is because none of the optional points would be determinative, including the five optional veterans points. And also, there is not a veterans ownership requirement, Your Honor. Under the amendment, the amendment calls for the top scoring applications. And it's your position that without interpreting or re-evaluating the points, without some sort of, because you keep saying 230, 230 was not the figure that was used to determine the top scoring. So are you saying that they would have to revise their entire calculations and then your client would be in the top scoring? Or as we have the facts today, your client would be in the top scoring, but for there was no five points difference for the veteran. Yes. So what my client's position is. That's your position. Your Honor, yes. My position is that the proper interpretation of the CRTA's tied applicant definition in accordance with the legislative intent is not that 252 points is the only qualifying score because that creates an outcome that the legislator did not intend. Evidence of the legislators, of the general assembly not intending such an outcome is the fact that they amended the act in response to that very outcome. And so the proper fair statutory score to qualify for the tied applicant lottery should be 230 because it takes into account the plain language of the act and the legislative intent. And also, Your Honor, it's important to know that plaintiff is not standing here having only scored 230. Plaintiff's case is the perfect example of how there was, in fact, a veteran's ownership requirement imposed in a tied applicant lottery because plaintiff got every point but those optional points. And that's the only reason it did not participate. So the thing is, it is unconstitutional for defendants who have elevated and decided that these, quote, perfect score applications were, in fact, superior to all other applications for the tied applicant lottery when, in fact, the plain language of the CRTA and the legislative intent did not call for such a conclusion. Counselor, you're getting a little repetitive. Absent other questions from the panel, I think your time has expired. Are there any other questions from the panel? Justice Weill, do you have any? No. No, I don't have any. Justice Ocasio, any questions? I have no questions. Thank you. Okay. Appley? May it please the court and counsel, I'm Assistant Attorney General Richard Huzzack, counsel for the Defendant Appley Department of Financial and Professional Regulation, and I urge the court to affirm the circuit court's decision on the constitutional issue, and if necessary, on the additional procedural issues that the plaintiff has raised. I concur in the view that the procedural issues are not relevant. If the plaintiff is unable to prevail on its constitutional claim, we have a pure question of law that was raised in this case, and it has to do whether the five-point allowance in the act for the tied applicant lottery for applicants that are majority owned by veterans violates substantive due process. And I want to sort of highlight what I think is the essence of the plaintiff's argument, which is that after the scoring was done, the statute provided 50 social equity points and five veterans ownership points and a bunch of other points, and the plaintiff got the 50 social equity points, but it didn't get the five majority-owned veteran points because they're not majority owned by a veteran. And after all the scoring was done, it turned out that there were more perfect scores with all possible points than there were licenses in each of the geographic regions of the state. And the result was that the cutoff score, the qualifying score to get a license, and even to get into a lottery, a tiebreaker lottery to get a license, happened to be the perfect score with all of those elements, including the veteran ownership points. And the plaintiff's position, we believe, is essentially a fairness argument, that that's not right, that the legislature didn't intend to have the veteran ownership points be necessary for anybody to get a license. But we're not dealing with a fairness issue here. We're not dealing with the wisdom of the statute. We're dealing with the constitutionality of the statute. And I do want to add that in response to this unexpected scoring situation where you wound up having to have a score to get into a lottery and get a license, the legislature responded by saying that there's going to be 110 additional licenses that people would get, that they would be eligible for, in two other rounds of lotteries where you didn't need to have the veteran ownership points. And the plaintiff- Counselor, you keep saying required to have the veterans ownership points, need to have the ownership points. Where in the statute does it say you have to have veterans ownership points? In this lottery? It does not. And that's a key fact here. It just turns out that as the statute was applied according to its terms, the only applicants that were eligible to participate in the lottery were participants that had perfect scores. So it's- Exactly right. To attain a perfect score, you had to have the five veterans preference points. Correct. The statute- Does the legislature have a right to pass a statute that grants the five veterans preference points? Absolutely. And our position is that there's longstanding precedent for exactly that type of preference. And I would like to briefly respond to the argument that the legislative intent was for it to be based upon social equity and not veterans points. No, the legislative intent as set forth in the terms of the act was that you get 50 points for social equity and five points for veterans. That's a modest preference in comparison. And there's plenty of case law, including our Supreme Court's Denton decision, which adopts the reasoning of the U.S. Supreme Court's Feeney decision that says that these preferences are well established, they're constitutional, they don't violate equal protection, even if as they play out, they have some type of disproportionate effect upon different people that might be otherwise qualified. The Feeney case is very clear on that. And so our view is that it's a challenge to the statute itself that has to be examined. And the statute itself easily satisfies the very lenient substantive due process standard, which doesn't look in hindsight. The standard doesn't say the legislature had to have a crystal ball. They had to anticipate how this would be applied or implemented and create a situation in which it would be rational to have it apply in that manner. The case law is repeatedly clear that a statutory provision survives due process, substantive due process, if any set of circumstances conceivably imagined by the legislature, including rational speculation, could provide a basis to conclude that the provision itself validly serves a legitimate government purpose. And those purposes for veterans include rewarding them for serving in uniform, protecting their country, and encouraging other people to do so. This statute providing five veteran points, five points out of 252 for majority veteran ownership, easily satisfies that standard. And it's also critical to know that the legislature doesn't have to express findings in the statute. The standard here for substantive due process or equal protection is anything that the legislature could have contemplated. And so they don't need to put it in the statute. They did not make a specific finding in the statute to justify the veteran points provision, but they didn't need to given this strong body of case law that has been in place for decades or much longer. How do you distinguish your opponent's reliance on Morales versus City? Those two cases, as we've described in our brief, are situations in which the legislature crossed the line. It essentially allowed unqualified persons to have a preference over qualified persons. For peddlers, they said, if you're a veteran, you don't need a license, you don't need to satisfy the licensing criteria. And the result was, and this has been discussed in some of the other cases and other jurisdictions, that it gave a preference for unqualified veterans over qualified non-veterans. And there's a dispute that in this case, all of the applicants were subject to the need to show their qualifications for operating an adult cannabis use dispensary. The other case that related to the exemption of veterans from committing fraud on their employment applications, the court said, there's no valid legislative purpose for allowing veterans to commit fraud when they're seeking employment. And so those cases are fundamentally different from the ones where the courts have repeatedly upheld civil service benefits, where you get a five-point bonus on your employment application in applying for government service. And this is, I think, closely akin to that, where only qualified individuals are entitled to this benefit, and it is a modest benefit to assist people who serve their country in uniform. There is no substance to the argument that it's what the department did, as opposed to what the department said, that resulted in this way the statute played out, so that only people with all of these points were participating in the tiebreaker lotteries. That was a straight, strict application of the statute as written. There's nothing about the department's rules, the way they wrote the rules, the way they interpreted the rules, the way they applied the rules, that departed at all from what the statute required. The department had no ability to depart from the statute. It applied the statute literally as written, and the result was what we got. The plaintiff's argument, which is that you look in hindsight at how things played out, and that determines whether there's a constitutional violation, would apply to the social equity points as well. Everybody who got social equity points, you had to get those, again, in hindsight, not by the terms of the statute. It didn't say those were required to get a license, but as the statute was implemented, it turned out that if you didn't have those points, you couldn't get a license. Well, the same substantive due process argument could be made against those, in which event every provision of this act would be thrown out, because how it was implemented, according to the terms of the statute, meant that everybody had to get all possible points to be eligible to be in a lottery, tiebreaker lottery, to get a license. But how the statute laid out in practice is not the test of substantive due process violation. The test is... Yes. How do you respond to a plaintiff's argument that the amendment of the statute, in fact, is a verification that there's something wrong with the application or the award of veterans points versus the social equity points? I think the amendment of the statute is a recognition that the legislature wanted to make a policy choice so that people who didn't have all of these points would be able to get a license, but they didn't change the tied applicant lottery, which was the original lottery that was provided for in the statute. They left that in place. Now, it's obviously up to the courts, not to the legislature, to determine the constitutionality of the statute, but the legislature didn't change the operant provisions of the very lottery that the plaintiff complains about. They added two additional lotteries under the same application for 110 additional licenses. The plaintiff participated in two of those lotteries and got one of those licenses. So I think the policy position of the legislature in the unexpected circumstances that occurred that surprised everybody was to say, okay, we didn't expect this. Let's do something that helps the people that didn't get 100% of the points. That was not something we expected to happen. Let's help out those other people that didn't have, for example, veteran points. And then a lot of them did get licenses. So as a policy matter, I'm not going to ask the court to debate the wisdom of what the legislature did, but it certainly wasn't an expression by the legislature that the act as originally enacted was somehow unconstitutional because they didn't change that. I'd be glad to answer if the court wants any of the plaintiff's arguments about whether they were improperly denied a contested case hearing before the agency or whether the circuit court's procedures ordered for the corrective lottery in which the plaintiff opted out somehow raised an argument of reversible error. I think that without a valid claim on the constitutional issue, those issues really don't need to be decided on their merits because there's no prejudice to the plaintiff from them. It had a pure constitutional issue on which its claim does not have any merit. I do want to dispute the plaintiff's characterization of the Fox River Garden case. That case did not say that, as the plaintiff describes it, that veteran ownership points were required by the act to get a license. In fact, it says the opposite. It says that the act didn't require those points to get a license. It enabled parties to get five points by getting veteran ownership points. And if the result of that was that it increased their chances of getting a license, that's just applying the act as written. So we simply dispute that characterization. And there's no basis in the statute to say that the point shouldn't have been the top scoring level. Instead, it should have been 230 points. That number sort of comes out of thin air. The act doesn't support it. The act anticipates that the highest scoring applicants would get licenses or get into a tiebreaker lottery to get a license, which is essentially what the department did as written. And Justice Lyle's comment about the impact of what the act's provisions making certain elements of an application necessary and others optional has to do with whether you get scored or not, whether you are disqualified. There was no disqualification of this plaintiff's application for not including veteran ownership points. It just didn't get those points. That's very different from being rejected and not scored as a result of not having that. And that's the difference between if the act said it was required to get a license and the implementation of the act. I think I've addressed, I believe, all the court's questions. The major points that I wanted to touch upon here, pretty much everything else is in my briefs. If the court wants to discuss any of the reply brief arguments that have to do with the supposed need for an agency level hearing, I would like to address those. If there's any concern about those, we dispute that argument. It's Article 15 that sets the procedures here, not Article 55 for licensing. And the Nyhammer case sets a very strong, clear statement rule for when a statute requires a tested case hearing with live testimony, witnesses, and the like. And that is not satisfied by any of the statutory provisions that the plaintiff has relied on, nor does due process require live testimony hearings for every time that there's a failure to get a license or an alleged deprivation of a property interest. Unless there are any more questions, I urge the court to affirm the circuit court's decision holding that the act's veteran points provision is constitutional, does not violate substantive due process, and that there was no error by failing to provide an evidentiary hearing at the agency level. The record that was filed includes everything was done at the agency level. It didn't include an evidentiary hearing transcript and exhibits because one wasn't required under the statute. And finally, the corrective lottery procedures for the corrective lottery that the plaintiff opted out of. There's no prejudice the plaintiff and those are valid. All of those rulings by the circuit court, we urge this court to affirm. Thank you so much, your honors. Are there any further questions, Justice Weill? No. Justice Ocasio? No. Rebuttal, please. You have five minutes, Mr. Walker. Thank you, your honor. First, I want to start off by saying that the constitutional issue here is not about the General Assembly's decision to allocate five points for majority veteran ownership. Plaintiff's constitutional challenge does not take any issue with the fact that the General Assembly allotted five points for veteran ownership. The constitutional question that must be answered is, by allotting five points for veteran ownership, did the General Assembly intend to impose a veteran's ownership requirement under the act? This court's recent ruling in Fox River Gardens answers no. The defendant's counsel just said the quiet part out loud. It said that the General Assembly was surprised by the outcome of 252 points being the only qualifying score for the tied applicant lottery. Another way of saying that the General Assembly was surprised is that that was not in keeping with this legislative intent. And not only did the General Assembly add the two additional lotteries, it adopted its own definition of the tied applicant. Had it intended, as defendant's counsel argued, that the same outcome occur in regards to the tied applicant lottery, it would have adopted its definition that it promulgated through its emergency rules in 2019. It did not. It rejected that definition because it was rejecting the outcome that that definition brought about. And this isn't about the impact. This is an as-applied challenge about the impact of the defendant's decision that 252 was the only qualifying score. That impact was that you had to be majority veteran owned to qualify for the tied applicant lottery. It is that impact that must be weighed against the legislative intent, which this court has already said was not to impose a veterans ownership requirement. Now, in regards to the impact of the social equity points, that's in keeping with the legislative intent. This is a social equity bill. So the fact that you could not participate if you were not majority owned by a social equity applicant is in keeping with the intent of the legislator. Whereas with the veterans points, that was not the intent. And so that's why I would rest my argument is that the impact of the veterans points in this tied applicant lottery is the constitutional question. If the court finds that the legislative intent of the CRTA was not to impose a veterans ownership requirement under the act, that legislative intent must be carried out and accomplished throughout the entire administration of the act, including the tied applicant lottery. And therefore, it was a violation of plaintiff's substantive due process rights for the defendant to exclude the plaintiff from the tied applicant lottery solely for not being majority veteran owned. Also, it's the record of proceedings issue is not about a right to an evidentiary hearing. What it's about is that defendant completely denied administrative review prior to making a final decision. And because of that complete denial of administrative review, defendant has not and cannot meet his duty under section 3-108B to file a record of proceedings. Defendant's administrative record in no way satisfies its duty under section 3-108B because it does not contain, although the court has recognized that the administrative agency cannot rule on constitutional questions, the case law has established that plaintiff cited in this case that although the administrative agency cannot rule on questions of constitution, that it is still a procedural due process requirement that plaintiff raise those issues before an administrative tribunal. Do the cases say they're required to raise it or do the cases say it'd be a good idea if they did? The cases say that it's a requirement that, here's why they say it's a requirement, because it says that if plaintiff did not raise those issues before the administrative tribunal, plaintiff would then waive those arguments for judicial review. Therefore, if the burden is placed on plaintiff to raise those arguments at the administrative level in accordance with due process, plaintiff must then also be given the opportunity to raise those arguments at the administrative level. Therefore, it is a violation of procedural due process for defendant to have completely denied administrative review. Here's the other thing, Your Honor, who's to say in the context of what defendant did, there's no guarantee that plaintiff's claim would only be questions of law. It just stands that that's how it occurred. But in reality, procedural due process requires that there was an administrative hearing, sorry, not administrative hearing, but that there was an administrative hearing. Again, in Plaintiff's brief, it states that it was defendant's denial of an administrative hearing or another method of administrative review that precludes it from meeting this duty under section 3-108B. Also, and lastly, didn't you receive administrative review before the circuit court? How can I receive administrative review? The circuit court under ARL judicial review is required to act only in a judicial reviewing capacity. Plaintiff's first opportunity to present his arguments cannot occur before a reviewing court under ARL. Section 3-110 makes that clear. And case law that plaintiff has cited in his brief states that the plain language in section 3-110 contemplates because it restricts review to only the record and the questions of law and fact that were raised during the administrative review proceeding. Therefore, the ARL contemplates and therefore requires some method of administrative review prior to the decision being written. I get back to my original question I asked in your opening argument. Could you please tell me how you were prejudiced by it if you lose the veterans' point session? Because I'm standing before this court having not received ARL judicial review in the manner that the act requires. Plaintiff has not filed a record of proceedings. Plaintiff has been allowed to deny my client administrative review completely and then come before the circuit court and now this court without a record of proceedings and not meeting a statutory duty whereby a 73-year Illinois Supreme Court precedent has stated emphatically and unequivocally that it is the exclusive duty of the defendant, the administrative agency, to file, to keep, and produce and file as his answer and administer a record of proceedings. And if it does not do so, it's not a technical error, your honor, but it is a procedural process violation. Here's me. I didn't suggest it was technical. I asked you three times how you were prejudiced if you lose your constitutional challenge to the application of the veterans' preference points. Again, your honor, it is plaintiff's position that plaintiff has been substantially prejudiced by being denied procedural due process in accordance with the ARL judicial review proceedings. It is unconsequential that judicial review complaint is only a question of law. The ARL makes no distinction or no exceptions under section 3-108b for questions of law versus questions of facts in the judicial review complaint. Yes, your honor. All right, counsel. Just to wrap this up, the department submitted about, what, 30 different pieces of information, data, evidence in their response. Is that correct? Yes. Yes. The department submitted all of the applications that were submitted and the information that was provided to applicants on its website. However, none of that information helps this court or any other reviewing court. I didn't ask that. I just asked you whether they had in fact made a submission. But that's the purpose of the proceedings, your honor. I understand what you're saying. In fact, was there any evidence? Was there any evidence that was not presented to the circuit court as a result of you not having the evidentiary hearing that you believe you are entitled to as a constitutional right? Your honor, again, plaintiff is not saying that it was entitled to an evidentiary hearing. Plaintiff is saying that it was entitled to some method of administrative review, whether that be an evidentiary hearing or some other method. However, your honor. Now, was there anything that you were prohibited from submitting to the reviewing court, which in this case was the circuit court? And as understanding that you don't believe that was the proper entity to be presenting it to, was there anything that you were prohibited from submitting? No, there was nothing I was prohibited from submitting to the circuit court under my judicial review claim. However, because there was no record of all of the circuit court, all of the circuit court's rulings are based on the record alone. One final thing and your remedy that you're seeking is for us to determine that, in fact, there was a constitutional violation. And then what happens to your plaintiff? I understand they've already been awarded one license. And so your plaintiff, would the scoring for all of the other applicants, the 901 applications be redone? Is that what you're seeking? No, your honor. Thank you for asking that question. Now, defendant's actions here, having not met his duty under section 3-108B, and because it's final administrative decision, in fact, does cover all three lotteries in all applications, under the Illinois Supreme Court ruling in Stroh, a reversal is possible of all of that. That's not what plaintiff is asking here today. Plaintiff does not want a reversal to harm any other applicant. However, plaintiff's constitutional rights have been violated and a reversal on procedural grounds is warranted because the defendant has not met his duty under section 3-108B. And also because as applied, the tied applicant definition was applied unconstitutionally and imposed a veteran's ownership requirement in the tied applicant lottery. The only thing Justice Lyle asked you was what relief are you asking? Right. So the relief I'm asking for, your honor, is a corrective lottery without blank entries for plaintiff's four entries because the circuit, in keeping with, again, the fact that the proceedings before the circuit court were unlawful, the circuit court, because there was no record of proceedings, made an unlawful lottery. Counsel, that's about the 15th time you've said the same thing. Are there any other questions of the panel, Justice Lyle? No, I have not. Thank you. Justice Ocasio? I have no questions. Thank you. Counsel, thank you very much for the argument. The matter will be taken under advisement and a disposition issued in due course. Our clerk will escort you out of the virtual courtroom and we thank you for your presentation. Thank you, gentlemen. Thank you, your honors.